IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.

Case Nos.:   5:07-cr-36-RS-GRJ
5:10-cv-132-RS-GRJ

JUSTIN JEROME SWAINE

_____ /

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 244). The Government has filed a response (doc. 249) and Defendant has filed a reply (doc. 257). After a careful review of the record and the arguments presented, the undersigned recommends that the § 2255 motion should be denied.

## PROCEDURAL BACKGROUND[1]

Defendant was charged in three counts of a seven count superseding indictment with conspiracy to possess with intent to distribute 500 grams of cocaine, 1000 kilograms of marijuana; and an unspecified quantity of Methylenedioxymethamphetamine ("MDMA" or "Ecstasy") (count one); possession of

_____

[1] Detailed statements of facts describing the offense conduct are set forth in the Government's brief on direct appeal and in the Eleventh Circuit's opinion in United States v. Swaine, 308 F. App'x 336 (11th Cir. 2009) and will be set forth herein only as necessary.

more than 50 kilograms of marijuana on a date certain (count six) and possession of firearms in furtherance of a drug trafficking crime (count seven) (doc. 20). Three co-defendants, Vernon Winston Kevin Henry, Jose Luis Jorge, and Christopher Alexander Artley, resolved their cases by guilty pleas (*see* docs. 75, 78, 117).[2] The remaining co-defendant, Carlfred James Anderson, pleaded guilty to the conspiracy charge and agreed to cooperate (doc. 96), but went to trial on the charge of possessing firearms in furtherance of a drug trafficking offense.

Defendant Swaine and co-defendant Anderson were tried jointly, with Swaine's trial encompassing all three counts and Anderson's merely the firearm charge. Defendant Swaine was represented by retained counsel R. Timothy Jansen. The jury acquitted both men as to the firearm charge, and Defendant was found guilty on counts one and six of the indictment (doc. 141). The jury specifically found that the conspiracy involved less than 500 grams of cocaine and more than 1000 kilograms of marijuana (*id*. at 2)[3] and that Defendant had possessed more than 50 kilograms of marijuana with respect to count six (*id*. at 3).

The Presentence Investigation Report ("PSR") was disclosed to the defense on November 9, 2007. Defendant was held accountable for 1,773.9 kilograms of marijuana with a corresponding base offense level of 32 (PSR ¶ 35). Despite his

---

[2] Mr. Henry's agreement was styled as a "plea agreement" rather than a "plea and cooperation agreement,"but it also provided him the opportunity to cooperate (doc. 117 at 3).

[3] The jury was not asked to make any findings with respect to MDMA. Counsel noted at sentencing that the Government had conceded that Defendant had nothing to do with that drug (doc. 212 at 22)..

acquittal on count seven, a two level increase was applied for his possession of a
firearm, using the preponderance of the evidence standard (PSR ¶ 36).  After a four
level adjustment for Defendant's leadership role in the offense, his total offense level
was 38 (PSR ¶¶ 38, 44).  Defendant had only a single criminal history point and his
criminal history category was I (PSR ¶ 48).  The defense objected to the quantity of
drugs attributed to Defendant and to the application of the firearm adjustment (PSR ¶¶
94–103).  In turn, the Government objected to the lack of leadership role enhancement,
and based on the additional information it provided, the probation officer revised the
PSR to reflect this adjustment  (PSR ¶¶ 105–108).  The applicable guidelines range
was 235 to 293 months.

At sentencing, defense counsel noted that he did not get a chance to file written
objections to the amended PSR that contained the leadership role adjustment and that
he wished to render an objection at that time (doc. 212 at 4).  After hearing argument
about the quantity of drugs that should be attributed to Defendant, the court declined to
impeach the jury's findings and denied the objection on drug quantity (*id*. at 16).  The
court sustained the defense objection to the firearms enhancement (*id*. at 22) which
lowered Defendant's total offense level by two levels.  After argument about the
leadership enhancement, the court overruled that objection and allowed the
enhancement to stand (*id*. at 27).  Defendant's revised advisory guidelines range was
188 to 235 months (*id*. at 46).  The court sentenced him near the mid-point of that
range, to a term of 211 months imprisonment (*id.* at 45–46).  Defendant requested that
an appeal be filed in his behalf (*id*. at 48–49).

Defendant raised issues regarding both his trial and sentencing on appeal. First, he argued that co-defendant Anderson's counsel made several improper remarks during the trial that violated his Sixth Amendment right to confrontation (doc. 230 at 16–19). The appellate court found no error (*id*. at 19). Next, Defendant raised three challenges to his sentence: (1) that the district court procedurally erred when it did not *sua sponte* stop the sentencing hearing so defense counsel could discuss the revised PSR and leadership role enhancement with his client; (2) that the court clearly erred in applying the four-level leadership role enhancement; and (3) that Defendant's sentences were substantively unreasonable because they were greater than that of his co-defendants (*id*. at 19–20). The Eleventh Circuit rejected each of these arguments in turn (*id*. at 21, 22, 23–24). Defendant's convictions and sentences were affirmed. United States v. Swaine, 308 Fed. App'x 336 (11th Cir. 2009).

In the present motion, defendant raises ten grounds for relief, nine of which are claims of ineffective assistance of counsel, and one of which alleges a sentencing error. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack.  *See* 28 U.S.C. § 2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  <u>Rozier v. United States,</u> 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Id., 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697; Brown v. United States, ___ F.3d ___, 2013 WL 3455676 (11th Cir. July 10, 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's perfroamnce in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent

counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Secretary, Florida Dep't of Corrections, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  *See* Boyd v. Comm'r, Ala. Dep't of Corrections, 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

### *Ground One–Failure to Move to Change Location of Trial*

Defendant first contends that counsel was constitutionally ineffective because he failed to move to change the location of the trial to a more "advantageous forum" (doc. 244 at 7).  Defendant's trial was conducted in the Panama City division of this court.

He now asserts that counsel should have moved to have the trial conducted in either the Tallahassee or Gainesville divisions, because each of those divisions has a higher percentage of black registered voters than Panama City (doc. 244 at 8). Although race was not an issue in this trial, Defendant apparently assumes he would have been more likely to have been acquitted with a higher percentage of members of his own race in the prospective jury pool.[4] He also maintains that he was prejudiced because his trial coincided with jury selection in the high-profile state court criminal trial concerning the death of Martin Lee Anderson at a Panama City boot camp, which polarized Panama City along racial lines and prevented him from receiving a fair trial (*id.* at 9). Lastly, he notes that one of the key Government witnesses, co-defendant Bondurant, was supported in court by his father, who was a prominent well-known attorney in the area (*id.*).

Defendant has failed to establish either that counsel's performance was deficient or that he suffered prejudice under Strickland. Rule 18 of the Federal Rules of Criminal Procedure provides that an offense must be prosecuted in the district in which it was committed. Fed. R. Crim. P. 18. The place of trial within the district is to be set with due regard for the convenience of the defendant, witnesses and the prompt administration of justice. *Id.* A division has no constitutional significance and Rule 18 does not confer any absolute right on a defendant. *See* United States v. Burns, 662

---

[4] Defendant's suggestion that Gainesville would have been an appropriate location for his trial is clearly based on nothing more than his perception of the racial make-up of the potential jury pool in that area, and there is no apparent nexus between the conspiracy and Gainesville.

F.2d 1378, 1382 (11th Cir. 1981); *c.f.* United States v. Gresham, 63 F.3d 1074 (11th

Cir. 1995) (finding no constitutional infirmity in the practice of selecting grand and petit

juries from judicial district at large rather than division in which crime occurred); *see also*

United States v. White, 590 F.3d 1201 (11th Cir. 2009) (distinguishing change of

division from change of venue).

In this case, although Defendant was living in Tallahassee at the time of his

arrest, there was evidence that portions of the conspiracy occurred in both the Panama

City and Tallahassee Divisions of this court, and in fact that Defendant had initially been

involved in the conspiracy while residing in Jackson County, Florida, which is within the

Panama City Division of this court (*see e.g.,* doc. 74; doc. 208 at 112, 120; PSR ¶¶

17–19).  Furthermore, drugs and/or large quantities of currency were seized in Texas,

in Panama City and in Tallahassee, and the first co-conspirator arrests in this case took

place in Panama City (*see* doc. 74 at 3).[5]  Rule 18 does not contain a provision for

transfer due to Defendant's dissatisfaction with the racial makeup of the jury pool.[6]  If

that was the case, no African-American criminal defendants could be tried in the

Panama City division of this court.

---

[5]Jose Luis Jorge and Christopher Alexander Artley were originally charged in case no.: 5:07cr32/RS as a result of their arrest.  The indictment in that case was dismissed as it was superseded by the indictment in the instant case (Case No.: 5:07cr32, docs. 38, 39).

[6]Federal Rule of Criminal Procedure 21 governs transfers to another district, which is not the issue raised here.  Pursuant to Rule 21(a), the court **must** transfer a criminal trial to another district upon motion by the defense if the court is satisfied that the defendant cannot obtain a fair and impartial trial.  Fed. R. Crim. P. 21(a).  Similarly, the court **may** transfer the proceedings to another district for the convenience of the parties or witnesses or in the interest of justice.  Fed. R. Crim. P. 21(b).

Counsel is not ineffective for failing to preserve or argue a meritless claim.

Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also*

Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective

for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907

(11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements

by prosecutor, or accurate statements by prosecutor about effect of potential sentence);

Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing

to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359

(11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably

believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th

Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless

issue); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not

ineffective for informed tactical decision not to make what he believed was a meritless

motion challenging juror selection procedures where such a motion has never been

sustained because such a motion would not have been successful). Defendant has not

shown that it was improper to hold the trial in Panama City or that a motion to move the

trial to an alternate location would have been granted.  Hence, he has not shown that

he is entitled to relief.

Defendant's concerns about the publicity surrounding the state court trial for the

death of Martin Lee Anderson having an effect on his case are nothing more than

speculation.  There was no mention of Anderson's case before the jury in this case, and

frankly no similarity or overlap between the drug trafficking charges in this case and the

death of a 14 year old boy at a state-run juvenile boot camp.   Furthermore, jurors were

cautioned on the first day of trial to avoid reading any newspaper articles about the

case and to "avoid listening to or observing **any** broadcast news programs on either

television or radio because of the possibility that some mention might be made of the

case during a broadcast" (doc. 206 at 19).  Defendant's speculative assertion that the

timing of the two trials resulted in prejudice to him that could have been avoided if only

counsel had moved to change the location of the trial does not provide a basis for relief.

Similarly, any suggestion that the fact witness Bondurant's father was an

attorney was  prejudicial to Defendant is also mere speculation.  The senior Mr.

Bondurant did not testify during the trial, and he was mentioned only briefly (*see* doc.

206 at 49; doc. 208 at 106, 136).  The fact that the father of one of the witnesses was,

according to Defendant, a prominent local attorney, had no bearing on the question of

the propriety of the Panama City Division as an appropriate venue for this case.

Counsel was not constitutionally ineffective for failing to move to transfer the location of

the trial on this basis.

In sum, there was no basis for counsel to make the motion Defendant now faults

him for failing to make on any of the grounds he suggests.  As such counsel's

performance was not deficient, there has been no showing of prejudice under

Strickland, and Defendant is not entitled to relief.

### *Ground Two: Failure to Move to Sever Trial*

Defendant contends that counsel was constitutionally ineffective because he

failed to move to sever Defendant's trial on counts one, six and seven from co-

defendant Anderson's trial on count seven after Anderson pleaded guilty to counts one and six.  Although Defendant did not specifically raise the issue of severance on appeal, the Eleventh Circuit *sua sponte* stated that "to the extent [Defendant] raises any severance issues, we conclude they lack merit."  United States v. Swaine, 308 F. App'x at 343 n.1.  The court also rejected Defendant's Confrontation Clause argument, which likewise stemmed from the joint trial of Anderson and Swaine.  *Id*. at 343–44.  The propriety of the joint trial, which has already been decided adversely to him on direct appeal, may not be relitigated under the guise of an ineffective assistance of counsel claim in a § 2255.  *See* Nyhuis, 211 F.3d at 1343; Sanders, 373 U.S. at16; DuPont v. United States, 76 F.3d 108, 110–11 (6th Cir. 1996).  Thus, Defendant is not entitled to relief.

Also incorporated in Defendant's second claim is an assertion that counsel failed to obtain discovery necessary to cross-examine the cooperating witnesses.  Specifically, he contends that counsel failed to move for disclosure of testimony provided to the grand jury and for the Government witnesses' "criminal case documents."  If, by criminal case documents, Defendant means his co-conspirators plea agreements, he is factually mistaken about counsel not having these documents at hand.  The co-defendants' plea agreements, statements of facts and "notice of elements and penalties" were part of the record in this case (docs. 70, 74, 75 (Jorge); docs. 71, 77, 78 (Artley); docs. 95, 96 (Anderson); docs. 115–117 (Henry)).  The three cooperating witnesses were questioned on both direct and cross examination about their plea agreements and the benefits they hoped to reap by testifying for the

Government  (doc. 208 at 3–4, 35–40, 44–45, 68–69 (Artley); 186–87, 221–224,

230–31, 234–237 (Jorge); doc. 209 at 89–91, 127–128, 136–145 (Henry)).  Robert

Bondurant, who had been charged in the Eastern District of Texas but had not yet

entered into a plea at the time of Defendant's trial was also questioned about his proffer

letter and hopes for lenient treatment (doc. 208 at 82–84, 131–132, 137–139, 152–153,

156–157).  Finally, David Benton, who was prosecuted on state charges, was also

questioned about his agreement with the Government  (doc. 251–252, 265–266, 272).

With respect to the Grand Jury testimony, even if defense counsel was entitled to

review such testimony, Defendant has not explained how he was prejudiced.  Thus,

Defendant has failed to show his entitlement to relief on this ground.

### Ground Three: Failure to Inform District Court about co-defendant Anderson's Plea

Defendant next contends that the Government failed to inform the district court

that Anderson had entered a guilty plea to count one of the indictment and that count

six had been dismissed (doc. 244 at 10–11).  Defendant's assertion that the

Government "did not disclose the existence of these [plea] documents and facts to

Judge Smoak"(doc. 244 at 11) is nonsensical.  The same district judge, the Honorable

Richard Smoak, presided over Anderson's change of plea hearing,  dismissed count six

of the indictment as to Anderson, and also presided over Defendant and Anderson's

joint trial (*see* docs. 93–96).  Clearly, there was no error on the part of either the

Government or defense counsel.

To the extent Defendant realleges a claim that counsel should have moved to sever his trial from that of Defendant Anderson, he is not entitled to relief. No Bruton[7] issue was present between Defendant Swaine and co-defendant Anderson as neither made a post-arrest statement (*see* docs. 89, 102), and no such statement was offered at trial. Furthermore, this issue was resolved by the Eleventh Circuit on appeal, and may not be reasserted here, as discussed *supra*. Defendant is not entitled to relief on this ground.

### *Ground Four: Failure to Object to Addition of Cocaine Charges*

Defendant's fourth claim for relief it is that counsel failed to object, when – with the permission of the district court prior to trial – the Government "added" to the conspiracy charge by including more than 500 grams of cocaine, while it did not do for co-defendant Anderson. Defendant maintains that he was the only defendant in the case who was charged with conspiring to distribute more than 500 grams of cocaine.

Defendant's assertion that the cocaine was "added" on the first day of trial is spurious. The superseding indictment entered on July 17, 2007 specifically charged that the conspiracy involved more than 500 grams of cocaine (doc. 20 at 2). There was no basis for counsel to make a pretrial objection to the fact that the Government charged and intended to prove that Defendant's offense conduct involved cocaine. Counsel is not ineffective for failing to preserve or argue a meritless claim. *See* Freeman, 536 F.3d at 1233; Brownlee, 306 F.3d at 1066; Chandler, 240 F.3d 907; Meeks, 216 F.3d at 961.

---

[7] Bruton v. United States, 391 U.S. 123 (1968).

To the extent Defendant asserts any kind of "error" because he was the only Defendant held responsible for cocaine, he is not entitled to relief.  This claim was not raised on appeal is procedurally barred and unavailable on collateral review.  *See* <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley</u>, 523 U.S. at 621.  In any event, witnesses Bondurant, Jorge and Henry testified that their dealings with Defendant included some cocaine as well as marijuana (*see* doc. 208 at 82–84, 90–91, 200–201; doc. 209 at 106–108), and thus Defendant was properly held accountable for this substance as well, regardless of the court's findings as to the remaining defendants.  He is not entitled to relief.

### *Ground Five–Prejudicial Impact of Joint Trial on Jury Selection*

Defendant next complains that due to the joint trial, the Government and co-defendant Anderson's attorney were able to strike potentially "favorable" jurors. Defendant  does not identify any specific juror whom he believes was stricken to his detriment, and he does not explain how the striking of any particular juror or jurors had the effect of rendering his conviction unconstitutional.  Furthermore, a review of jury selection suggests that defense counsel were in agreement with how they exercised their peremptory challenges (doc. 207 at 112–116); <u>United States v. Hooper</u>, 575 F.2d 496 (5th Cir. 1978)[8].  Defendant has not shown how his interests were adverse to those of Anderson with respect to jury selection.  In fact, their interests seemed similar: both men had been involved in similar offense conduct allegedly involving controlled substances and weapons, although Anderson had entered a guilty plea to the

---

[8]All cases from the former Fifth Circuit issued by the close of business on September 30, 1981, are binding on the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

controlled substance offenses.  Finally, the record reflects that there was no abridgment

of Defendant's right to exercise peremptory challenges, as defense counsel jointly used

only seven of the ten peremptory challenges afforded by Federal Rule of Criminal

Procedure 24(b)(2) (doc. 207 at 112–116).

As part of his complaint about the jury, Defendant claims that a juror who was

selected to serve was a probation officer.  He seems to suggest that this juror was, by

the mere nature of the juror's profession, automatically unfavorable to the defense.

The juror is not identified by name or number, and the Government notes that it is

"without knowledge" as to whether this is true because the jury questionnaires were

returned to the Clerk of Court and not made part of the record, as required by the Local

Rules (doc. 249 at 19).  The simple fact of the juror's profession does not render

counsel constitutionally ineffective for his failure to challenge the presence of a

probation officer on the jury, and Defendant has shown no basis for a viable challenge

to the content of the jury.  Also, in light of the abundant evidence presented at trial, it is

unlikely that a different jury could have reached a more favorable result.  Defendant has

not shown that counsel's performance was constitutionally deficient with respect to jury

selection, and no relief is warranted.

### _Ground Six–Failure to Object to Prejudicial Statements by co-defendant's Counsel_

Defendant contends that his attorney was constitutionally ineffective because he

"did not file proper motions to make objections during the trial proceedings" (doc. 244 at

14).  As the only example, Defendant asserts that Attorney Sadow, who represented

co-defendant Anderson, made numerous unidentified prejudicial statements in his opening statement, during trial and his closing argument that would not have occurred had the trials been severed (*id*.). Defendant's bald assertion that his attorney should have objected to unspecified statements of co-defendant's counsel throughout the trial is insufficient to carry his burden under Strickland. It is Defendant's burden to show the deficiency of counsel's performance, and this court cannot be expected to comb the record to locate a vaguely referenced and conclusory allegation of error. *See e.g.,* United States v. Boyles, 57 F.3d 535, 549 (7th Cir. 1995) (citations omitted); R.I. v. Miami-Dade County School Bd, Case No. 07-20321-CIV, 2008 WL 3833414 at *23 n. 13 (S.D. Fla. Aug. 12, 2008); *cf.* United States v. Reward, 889 F.2d 836 (9th Cir. 1989) (court forced to comb the record due to inadequacy of Government's brief); United States v. Bosby, 675 F.2d 1174, 1181 (11th Cir. 1982) (court searched the record for evidence of the illegality of a challenged search). In Defendant's reply brief he clarifies that his argument is that counsel's remarks resulted in a violation of the Confrontation Clause (doc. 257 at 13–23). As noted above, this very issue was addressed by the Eleventh Circuit on appeal, *see* United States v. Swaim, 308 F. App'x at 343–44, and may not be relitigated herein. Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. Defendant is not entitled to relief.

### ***Ground Seven–Failure to Object to Introduction of Evidence***

Defendant contends that counsel was constitutionally ineffective when he failed to object to the Government's introduction into evidence of 134 pounds of marijuana that was seized from co-defendant Anderson. Defendant does not suggest a basis for

counsel to have lodged a viable objection, noting merely that he had a separate

residence from co-defendant Anderson.

The marijuana in question was seized on July 13, 2007 from the utility room in

co-defendant Anderson's residence (doc. 210 at 16).  This was the same date that law

enforcement searched and seized marijuana from Defendant's business and from his

mother's residence (doc. 209 at 224, 232–33).  One of the items also seized from

Anderson's residence was an empty case or box for a Walther .22 pistol (doc. 209 at

262–63).  A gun with the same make, model and serial number matching that box was

seized from Defendant's residence (doc. 210 at 76–77), thus providing a definitive link.

Additionally, green cellophane that was used for packaging the marijuana was seized

from both Defendant's and co-defendant Anderson's residence (*id*. at 81).

In light of the connections shown between Defendant and co-defendant

Anderson, the marijuana seized from Anderson's residence was relevant and thus

admissible under Federal Rule of Evidence 401.  *See* Harrington v. United States, 415

F. App'x 986 (11th Cir. 2011) (evidence found at coconspirator's residence

corroborating defendant's involvement in conspiracy was admissible).  Counsel was not

constitutionally ineffective for his failure to object to the admission of this evidence.

Such an objection, if made, would have been overruled, and Defendant is not entitled to

relief.

### *Ground Eight: Failure to Object to Government's Failure to Produce Documents*

Defendant contends that his attorney was constitutionally ineffective when he

failed to object to the Government's failure to produce documents relating to the

criminal case of witness Robert Bondurant, which documents were discussed during the testimony of one of the Government witnesses.

Sgt. John Frederick Hart of the Texas Department of Public Safety, Narcotics Service testified about his role in an investigation involving Government witness Robert Bondurant who was arrested on July 13, 2006 (doc. 209 at 4). During this testimony, counsel for Defendant requested to approach the bench, at which time he informed the court that the defense did not have any of the documents relating to Mr. Bondurant's status as a CI, the conditions of Bondurant's release from custody after arrest and the conditions of his cooperation (*id*. at 29). Counsel expressed his belief that Bondurant had violated these conditions and sought the documents pertaining to such for use during cross examination (*id*.). Counsel also stated that the documents should have been provided to the defense as potential impeachment material (*id*. at 29–30). The court disagreed, stating that impeaching Bondurant with the documents was "on the periphery of the case at best" (*id.* at 31). Counsel for the Government did not object to producing any documents and putting them before the jury, but the court nonetheless directed that questioning should proceed, and once it became clear which documents witness Hart had, the court would decide whether he would be ordered to produce any of them (*id*. at 31–32).

Hart testified that on January 20, 2006 one week after Hart's initial contact with Bondurant, Bondurant received a federal "proffer letter"[9] when Bondurant went to see

---

[9] The proffer letter was explained as a letter issued by the U.S. Attorney or his designee for the purposes of an interview to protect comments and statements made during the interview. It provides that "No statements that you make will be used against

his attorney upon his release from custody (doc. 209 at 39).  Hart testified that he did

not impose any "terms and conditions" on Bondurant's cooperation, but merely told

Bondurant to stay in constant contact with him and to keep him apprised of any activity

pursuant to instructions in the proffer letter (*id*. at 40, 41).  Hart testified that Bondurant

was not documented as a confidential informant ("CI") until April 17, 2006, and that

before that date Bondurant had no lawful authority to engage in criminal drug activity

(*id*. at 63).  Hart explained that the existence of the federal proffer was not tantamount

to Bondurant being under any kind of federal scrutiny, but he clarified that Bondurant

was "under supervision" by the Texas Department of Public Safety and was to be in

constant contact with Hart and providing information on this case (*id*. at 63–65).  Hart

denied that Bondurant's involvement in an incident involving the transporting of 550

pounds of marijuana into Florida was in violation of Bondurant's bond, because

although law enforcement did not know about the event ahead of time, neither did

Bondurant (*id*. at 65).[10]  Hart clarified on re-direct examination that the informant

agreement entered into on April 17, 2006 was done in preparation for a scheduled

controlled buy, and that besides that and the proffer letter, there was only "an unspoken

understanding that [Bondurant] was trying to help and it would be considered" (*id*. at

66–67).  He also explained that three other witnesses backed up Bondurant's statement

you unless you come into a courtroom and testify differently" (doc. 209 at 63–64).  The
proffer concerns a single interview and does not indicate that a witness is cooperating or
under any kind of supervision (*id*. at 64).

[10] Bondurant testified that Defendant unexpectedly asked him to help with a load of
marijuana and he complied, without an opportunity to contact law enforcement officer
before acting (doc. 208 at 117–19; 152–53).

that he had not known about the 550 pound load ahead of time, and that Bondurant

had since been instructed as to how to conduct himself should such a situation arise at

a later date (*id*. at 67–68). Other than that incident, Hart testified that he was unaware

of any crimes Bondurant committed while supposedly cooperating, that he knew of no

other breaches of understanding with Bondurant, and that he had absolutely no reason

to doubt Bondurant's cooperation (*id*. at 68, 69–70).

After this thorough testimony about Bondurant's agreements, or lack thereof with

law enforcement the court took a short break. Upon reconvening the proceedings, the

court stated "I understand from Mr. Jansen that the timing on that agreement with the

last witness resolved the issue" (doc. 209 at 72). Counsel responded "That's correct,

Your Honor. I assumed it was a different date. I'm fine" (*id*.). Therefore, there was no

longer any need for the production of any documents relating to Bondurant's

cooperation, and thus there is no basis for Defendant's claim in this motion that counsel

was constitutionally ineffective for his failure to request same.

Within the same ground for relief, Defendant also claims that Bondurant

committed perjury at trial and he complains of the enormous disparity between the

sentence imposed upon Bondurant in the Eastern District of Texas with the sentence

he received. The connection between these two assertions and any allegedly deficient

performance by counsel is unclear. However, the court notes that there is no evidence

that Bondurant committed perjury in court. Bondurant truthfully testified that he was

stopped with about 250 lbs of marijuana, two kilograms of cocaine and a firearm,

although he was ultimately only indicted on "cocaine charges" (doc. 208 at 82, 84;

167–77).  Bondurant admitted he was not truthful during his first interviews with law enforcement after the traffic stop (*id*. at 132–33); he admitted his understanding that truthful testimony about his involvement in illegal conduct would not be used against him and the Government would help him if it could (*id*. at 137–38); he admitted the presence of the firearm in his vehicle (*id*. at 138–39); and he admitted both using drugs and giving MDMA to others (*id*. at 151–52).  The benefits to Bondurant of providing truthful testimony were fully explored at trial, and Defendant has not shown Bondurant perjured himself at trial.  There was nothing to which counsel should have objected.

Defendant's claim about the disparity between his and Bondurant's sentences does not provide a basis for relief.  The Eleventh Circuit discussed the issue of sentencing disparity on appeal.  In so doing it stated:

> Here, Swaine was not similarly situated with his codefendants, and the disparities between Swaine's sentences and those of his codefendants were not unwarranted for several reasons. First, the codefendants were not all convicted of the same offenses. Second, several of the codefendants received substantial assistance reductions for their cooperation with the government. Third, because there was abundant evidence that Swaine was the leader of the conspiracy, Swaine received a four-level role enhancement, which increased his advisory guidelines range from 121 to 151 months to 188 to 235 months. Finally, Swaine's codefendants pled guilty to some or all of the charges against them. Although Swaine contends that he was punished for exercising his constitutional right to a trial, the fact is that his codefendants were rewarded for their acceptance of responsibility.

Swaine, 308 F. App'x at 346.  The same rationale is equally applicable to the disparity between the one-day sentence the Texas court imposed on Bondurant and the 211 month term of imprisonment to which Defendant was sentenced.  Unlike Defendant,

Bondurant was protected by his proffer from being held accountable for anything other than the contraband found on him when he was arrested. Bondurant's criminal activity stopped with his arrest on January 13, 2006, well before Defendant's ultimate arrest by law enforcement in July of 2007. Bondurant was not in a leadership role in the conspiracy; he cooperated fully with law enforcement; and, the Government notes that he was instrumental in the successful prosecutions of numerous individuals involved with this conspiracy (doc. 249 at 26–27). Bondurant was also sentenced in an entirely different district court. Considering finally that Bondurant was sentenced well after Defendant's trial and sentencing, counsel had no viable argument to make with respect to disparate sentences between Bondurant and his client. He was not constitutionally ineffective and Defendant is not entitled to relief.

### *Ground Nine: Application of the Leadership Enhancement*

Defendant contends that the Government should not have been allowed to add the enhancement for his role in the offense, when he was not found guilty of being a leader or organizer, and the Government failed to prove same. Defendant contends that counsel was constitutionally ineffective because he failed to seek a continuance of the sentencing hearing in order to be better prepared to respond to the Government's attempt to "add" this enhancement a mere six days before sentencing.

Defendant challenged the leadership role enhancement on appeal, arguing that the district court clearly erred by applying the four-level enhancement. Swaine, 308 F. App'x at 345. The Eleventh Circuit found that the evidence at trial "amply supported" the enhancement. Specifically, there was evidence that Defendant:

> (1) was the prominent financier of the marijuana and cocaine conspiracy and made the decisions as to who would transport the drugs and how; (2) hired multiple people to transport hundreds of pounds of drugs and thousands of dollars obtained from selling the drugs between Texas and Florida; (3) traveled separately from the couriers between Texas and Florida; (4) loaned drugs on credit to distributors who sold them for him; and (5) hired multiple people to store and deliver drugs for him. Furthermore, as shown by the amount of assets seized from Swaine, he kept the largest share of the proceeds for himself.

Swaine, 308 F. App'x at 345. The court also rejected Defendant's argument that the district court did not have authority to apply the leadership role enhancement because there was no specific finding by the jury that Defendant was a leader. *Id.* at 345 n.6. Defendant now seeks to relitigate these issues under the umbrella of an ineffective assistance of counsel claim. Even if the court accepts that his challenge to this enhancement is not procedurally barred, Defendant has not suggested what arguments counsel could or should have made, had he moved for and been granted a sentencing continuance that would have altered the outcome of the proceedings. Thus, Defendant has failed to show prejudice under Strickland, and he is not entitled to relief.

### *Ground Ten: Sentencing Disparity/Unreasonable Sentence*

Defendant again argues in his final ground for relief that his 211 month sentence was unreasonable because of the variance and disparity between his sentence and that of co-defendants Anderson, Henry, Artley and Jorge, who received sentences of 41 months, 90 months, 23 months, and 90 months respectively (doc. 244 at 20–21), and Bondurant, who was charged in another district and sentenced to a term of one day imprisonment (*id*. at 22). As previously discussed, *supra*, the issue of sentencing

disparity was addressed on appeal, and may not be relitigated herein. Defendant has not suggested what arguments counsel could or should have made to alter the outcome of the sentencing proceedings. Defendant's dissatisfaction with the result does not form a basis for relief.

## Conclusion

For all of the foregoing reasons, the court concludes that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore, Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 244) should be **DENIED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 23rd day of July, 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**